UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AARON ECKERT,<br>    *Plaintiff,* | :   Case No. 3:24-CV-1626 (SFR)<br>:<br>: |
| v. | :<br>: |
| T. PETTWAY, *et al.*,<br>    *Defendants*. | :<br>:   November 20, 2025 |

### INITIAL REVIEW ORDER

Pro se plaintiff Aaron Eckert, an individual who was previously incarcerated at Bridgeport Correctional Center ("Bridgeport CC"),[1] filed this action pursuant to 42 U.S.C. § 1983. He names four defendants: Correctional Officers T. Pettway and Rios, Lieutenant Washington, and Warden Burgos. He brings claims under the Eighth and Fourteenth Amendments, alleging these defendants used excessive force against him and placed him in the Restrictive Housing Unit ("RHU") in violation of his due process rights. Eckert sues Defendants in their individual and official capacities and seeks damages, declaratory relief, and injunctive relief.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be

---

[1] Information on the Department of Correction ("DOC") website shows that Eckert was sentenced on October 1, 2024, to a term of imprisonment of ten months. *See* Inmate Information, Conn. State Department of Correction, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=351649 (last visited Apr. 1, 2025). The Court may take judicial notice of matters of public record. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 n. 1 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information). On September 17, 2025, Eckert notified the court that he had been discharged from DOC custody. ECF No. 15.

granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

I have thoroughly reviewed all factual allegations in the Complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[2]

## I.    FACTUAL BACKGROUND

I do not include below all of the allegations from the Complaint but summarize only those facts necessary to provide context for initial review.

Eckert entered custody at Bridgeport CC on March 20, 2024, after he was arrested on a warrant. ECF No. 1 ¶ 2. State police transported Eckert to Bridgeport CC from St. Vincent's Medical Center, where Eckert was receiving medical treatment for chest pain related to opiate detoxification. *Id.* ¶ 3. When Eckert arrived at Bridgeport CC, he was drowsy from receiving 60mg of methadone at St. Vincent's. *Id.* ¶ 4. Eckert was strip-searched and then placed in a holding cell in the "A.P. room" because he was dizzy and drowsy from the methadone. *Id.* ¶ 5. Eckert lay down on the holding cell bench so he could regain his strength to walk and covered his face with his arm to shield his eyes from the bright light. *Id.* ¶¶ 6-7.

Two minutes after he lay down on the bench, Correctional Officers Pettway and Rios came into the holding cell. *Id.* ¶ 8. Rios told Eckert to get up and stated, "let's not do this our way." *Id.* ¶ 9. Pettway suddenly pulled Eckert's arm from his face and said, "get the fu#! up or we[']ll make

---

[2] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

you get up." *Id.* This startled Eckert, who stood up and asked Pettway not to touch him. *Id.* ¶ 10. As Eckert said this, Pettway struck Eckert more than eight times in the face. *Id.* Rios grabbed Eckert from behind, "bear hug[ged]" him, and dragged him to the floor as Officer Pettway continued to punch Eckert. *Id.* Eckert could not defend against Officer Pettway's punches because Officer Rios had restrained Eckert. *Id.*

One minute before the alleged assault ended, either Pettway or Rios "call[ed] a signal 11," which means "a[n] inmate is out of control, or starting to be disr[u]ptive." *Id.* ¶ 11. Lieutenant Washington ran into the cell and told Pettway and Rios to leave. *Id.* ¶ 12. Eckert told Washington that Pettway and Rios "just beat [his] ass for [n]o reason" and told Washington to look at his arms to show a lack of defensive marks. *Id.*

Eckert was taken to the Restrictive Housing Unit, where he thought he was being taken for his safety. *Id.* ¶ 13. Instead, he received a Class A ticket for Flagrant Disobedience, which Eckert claims Pettway issued to cover up the assault on Eckert. *Id.* While in the RHU, Eckert tried to tell Washington what happened, but Washington ignored him and told him that he did not care. *Id.* ¶ 14. Washington told him, "Mr. Eckert, I don't care what happened, every inmate gets their[ ] ass who[o]ped, the D.O.C. is a family, Mr. Eckert, you sued us before, you got a win on us, take the los[s] now." *Id.* Eckert thought this comment referred to a lawsuit Eckert had filed against Washington and another lieutenant that had been settled nearly six years ago. *Id.*

Washington walked away and came back with a nurse, who told Eckert that he needed to go to the hospital because he had "a major bump on [his] head near [his] temple." *Id.* ¶ 15. The doctor at the hospital concluded that Eckert was assaulted. *Id.* ¶ 16. Eckert was returned to the RHU after his hospital visit. *Id.* ¶ 17. While there, Eckert spoke to the "ticket correctional officer," who told Eckert that Pettway admitted to assaulting Eckert because Eckert had made "side

comments" to Pettway several months ago when Eckert was working as a janitor in the prison. *Id.* ¶ 18. Eckert was denied an opportunity "by policy" to explain his side of the story. *Id.* ¶ 19. Eckert alleges he was held without due process in the RHU and forced to sign the ticket or "risk getting triple the sanctions." *Id.* ¶ 20. Eckert posted bond two days after being released from the RHU. *Id.*

## II.  DISCUSSION

### A. Official Capacity Claims

Eckert seeks damages, injunctive relief, and declaratory relief, ECF No. 1 at 10-11, against Defendants in both their official and individual capacities. *See id.* at 1. To the extent he asserts official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Thus, I consider only whether Eckert has sufficiently alleged claims for damages against Defendants in their individual capacities.

Claims for injunctive or declaratory relief may not be asserted against Defendants in their individual capacities. *Torres v. Connection, Inc.*, Civ. No. 3:22CV00883(SALM), 2023 WL 2477502, at *8 (D. Conn. Mar. 13, 2023) (dismissing plaintiff's claims for injunctive and declaratory relief against defendants in their individual capacities because the "Defendants would not have the authority to provide such relief in their individual capacities"). But Eckert "may seek injunctive and declaratory relief against the defendants in their official capacity because official-capacity actions for prospective relief are not treated as actions against the State." *Cruz v. Gomez*, 202 F.3d 593, 595 n.2 (2d Cir. 2000) (internal quotation marks omitted).

Eckert cannot, however, seek injunctive or declaratory relief from Defendants here because such claims became moot when he discharged from DOC custody. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006), *abrogated on other grounds as recognized by Kravitz v. Purcell*, 87

4

F.4th 111, 119, 122 (2d Cir. 2023) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."). Accordingly, Eckert's claims for injunctive and declaratory relief are dismissed as moot. *See*, *e.g.*, *O'dell'bey v. Mulligan*, No. 3:19-cv-00691 (JAM), 2019 WL 2491630, at *2 (D. Conn. June 14, 2019) (citing *Salahuddin*, 467 F.3d at 272) (dismissing plaintiff's claims for injunctive and declaratory relief as moot because plaintiff was no longer confined at the prison where alleged constitutional violations occurred).

    B.  Personal Involvement

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"). This is true with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) ("a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

Here, Eckert has not alleged any facts in his Complaint to establish Warden Burgos's personal involvement in the alleged constitutional violations. *See Tangreti*, 983 F.3d at 620. Eckert may not hold a defendant liable for a constitutional violation committed by another defendant based solely on the first defendant's "high position of authority in the prison system." *Wright*, 21 F.3d at 501. Thus, Eckert may not proceed on any claim against Warden Burgos.

    C.  Excessive Force Claim

Eckert brings an excessive force claim against Correctional Officers Pettway and Rios. *See* ECF No. 1 at 1. Because Eckert alleges facts concerning the use of excessive force arising from

5

his pretrial custody, his claims are analyzed under the Fourteenth Amendment, rather than the Eighth Amendment. *See United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (noting that "[w]hile the Eighth Amendment's protection does not apply 'until after conviction and sentence,' the right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment") (citations omitted).

"[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). A pretrial detainee can show that an officer's actions constitute punishment if the actions were "taken with an expressed intent to punish" or if "the actions are not rationally related to a legitimate nonpunitive governmental purpose" or "appear excessive in relation to that purpose." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 252 (2d Cir. 2020) (internal quotation marks omitted) (first quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979); then quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)).

"To determine whether an officer used excessive force, the factfinder must apply an objective reasonableness standard that turns on the facts and circumstances of each particular case." *Frost*, 980 F.3d at 252 (internal quotation marks omitted). This standard should be applied "from the perspective and with the knowledge of the defendant officer." *Id.* I must also "take account of the legitimate interests in managing a jail, acknowledging as part of the objective reasonableness analysis that deference to policies and practices needed to maintain order and institutional security is appropriate." *Kingsley*, 576 U.S. at 399–400. Relevant factors include but are not limited to "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the

amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 397.

In addition, prison officials can be held liable under section 1983 "for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence." *Abreu v. Bascue*, No. 9:18-CV-0186 (MAD/ATB), 2018 WL 11466956, at *13 (N.D.N.Y. May 1, 2018). Liability for failure to intervene "can arise where a prison corrections officer fails to prevent another corrections officer from committing a constitutional violation if '(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene.'" *Delano v. Rendle*, No. 9:13-CV-00070 (NAM/TWD), 2016 WL 4146476, at *11 (N.D.N.Y. July 12, 2016), *report and recommendation adopted*, No. 9:13-CV-70 (NAM/TWD), 2016 WL 4133542 (N.D.N.Y. Aug. 3, 2016) (quoting *Jean Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), *aff'd*, 461 F. App'x 18 (2d Cir. 2012)).

Eckert alleges that Pettway struck him over eight times in the face to prevent him from sleeping on a bench in a holding cell. *See* ECF No. 1 at ¶¶ 9–10. Accepting the facts alleged in the Complaint as true for purposes of this initial review, I cannot infer a penological purpose for these actions. Even if punching Eckert in the face was motivated by a penological purpose, the actions "appear excessive in relation to that purpose." *Frost*, 980 F.3d at 252. Eckert's allegations against Pettway suggest use of excessive force in violation of the Fourteenth Amendment. Eckert has also plausibly alleged that Rios had the opportunity but failed to intervene to prevent the use of excessive force. By Eckert's account, Rios not only failed to intervene to prevent Pettway from harming Eckert, but actively subdued Eckert so Pettway could harm Eckert. *See* ECF No. 1 ¶ 10.

Accordingly, Eckert's allegations are sufficient to state plausible Fourteenth Amendment claims based on the alleged use of excessive force against Officers Pettway and Rios in their individual capacities.

### D. Due Process Claim Related to Placement in the RHU

I also construe Eckert's Complaint as alleging a due process claim related to his placement in the RHU. *See* ECF No. 1 ¶ 1, 20. The Fourteenth Amendment provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The standard analysis for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

Eckert's Complaint does not say how long he was held in RHU. *See* ECF No. 1 ¶ 20 (stating only that he was bonded out two days after being released from RHU). The Second Circuit has held that "restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection and thus require proof of conditions more onerous than usual."). Here, Eckert has not specified the length of time he spent in RHU or alleged any additional circumstances in the RHU that might constitute "conditions more onerous than usual." *Id.* Thus, without further detail, Eckert's Fourteenth Amendment procedural due process claim relating to his placement in the RHU may not proceed against Pettway, who wrote the ticket, or Washington, who kept Eckert in the RHU. Eckert's procedural due process claim against Pettway and Washington is dismissed without prejudice.

However, Eckert's Complaint can also be read to raise a substantive due process claim relating to his placement in RHU.

8

"The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). Detainees in particular "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017) (quoting *Wolfish*, 441 U.S. at 535).

Analyzing restrictions imposed on detainees requires deciding "whether the [restriction] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.'" *Id.* (quoting *Wolfish*, 441 U.S. at 538). "Absent proof of intent to punish, 'that determination generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.'" *Id.* (quoting *Wolfish*, 441 U.S. at 538). This means that "if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees.'" *Id.* (quoting *Wolfish*, 441 U.S. at 539). For example, the Second Circuit has "found measures similar to Administrative Segregation not to violate substantive due process where prison officials subjected pretrial detainees to such measures in response to specific evidence that those detainees posed a risk to institutional security, and where the measures were not excessive in relation to that purpose." *Id.* at 55-56.

Here, Eckert alleges that Pettway wrote him a ticket and got him placed in RHU not because of a risk to institutional security but rather to "cover up" Pettway's assaultive actions and as punishment for "side comments" Eckert had made to Pettway previously. ECF No. 1 ¶¶ 13, 18. In addition, Eckert alleges that Washington refused to release him from RHU as punishment for his prior lawsuit against DOC officers. *Id.* ¶ 14. For purposes of initial review, Eckert has

sufficiently alleged that that his placement in RHU was for the purpose of punishment and not reasonably related to a legitimate government goal. Thus, Eckert may proceed against Pettway and Washington on his claim that his RHU placement violated his substantive due process rights.

### III. CONCLUSION

Based on the foregoing, I issue the following orders:

Eckert may proceed against Defendants Pettway and Rios in their individual capacities based on his claim of excessive force in violation of the Fourteenth Amendment. Eckert may proceed against Defendants Pettway and Washington in their individual capacities on his claim that he was held in RHU in violation of his Fourteenth Amendment substantive due process rights. Eckert's procedural due process claim against Defendants Pettway and Washington in their individual capacities for his placement in RHU is dismissed without prejudice.

I DISMISS Eckert's official capacity claims, claims for declaratory and injunctive relief, and any claims against Warden Burgos without prejudice.

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:**

(1) If Eckert wishes to proceed immediately **only** on the claims set forth above against Defendants Pettway, Rios, and Washington, he may do so without further delay. If Eckert selects this option, he shall file a notice on the docket on or before **December 20, 2025**, informing me that he elects to proceed with service as to the claims set forth in this paragraph. The Court will then begin the effort to serve process on Defendants named above in their individual capacities as described above.

(2) Alternatively, if Eckert wishes to attempt to replead any of the claims asserted in his Complaint that have been dismissed in order to attempt to state a viable claim, he may file an Amended Complaint by **December 20, 2025**. **An amended complaint, if filed, will completely**

**replace the Complaint, and I will not consider any allegations made in the original complaint in evaluating any Amended Complaint.** I will review any Amended Complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Eckert elects to file an Amended Complaint, the Complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Eckert by **December 20, 2025**, I will presume that Eckert wishes to proceed on the Complaint as to the claims permitted to go forward in this Initial Review Order, and Eckert will have to show good cause if he seeks to amend the Complaint in any manner in the future.

**Changes of Address.** If Eckert changes his address at any time during the litigation of this case, Local Rule 83.1(d)(1) provides that he **MUST** notify the Court. Failure to do so can result in the dismissal of the case. Eckert must give notice of a new address even if he is incarcerated. Eckert should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Eckert has more than one pending case, he should indicate all the case numbers in the notification of change of address. Eckert should also notify Defendants or counsel for Defendants of his new address.

**SO ORDERED** at New Haven, Connecticut, this 20th day of November, 2025.

                                          */s/ Sarah F. Russell*
                                          SARAH F. RUSSELL
                                          UNITED STATES DISTRICT JUDGE